

# ARKANSAS COURT OF APPEALS

DIVISION IV
**No.** CV–16–470

| | |
|---|---|
| CATHERINE ABRAM | **Opinion Delivered:** September 28, 2016 |
| APPELLANT | |
| | APPEAL FROM THE SEBASTIAN |
| V. | COUNTY CIRCUIT COURT, FORT |
| | SMITH DISTRICT |
| | [NO. 66JV-2011-106] |
| ARKANSAS DEPARTMENT OF | |
| HUMAN SERVICES and MINOR | HONORABLE LEIGH ZUERKER, |
| CHILDREN | JUDGE |
| APPELLEES | |
| | AFFIRMED |

## RITA W. GRUBER, Judge

Appellant, Catherine Abram, appeals from an order of the Sebastian County Circuit Court terminating her parental rights to her children A.D., born October 2, 2005, and H.D., born August 29, 2008. She presents three points on appeal: (1) the trial court erred in denying her motion to dismiss the termination proceeding where the case was filed in a previously closed dependency-neglect proceeding; (2) there was insufficient evidence to support the grounds for termination; and (3) there was insufficient evidence that termination was in the children's best interest. We affirm the circuit court's order.[1]

A dependency-neglect action was opened regarding A.D. and H.D. in 2011 and was closed by an order entered on April 14, 2014, following appellant's successful reunification with them. Less than a month after the case had been closed, appellant and her live-in

---

[1]Neither the putative father nor the legal father participated in the case; their rights were terminated, and neither is involved in this appeal.

boyfriend were arrested on drug-related charges. On May 12, 2014, the Arkansas Department of Human Services (DHS) filed a petition for emergency custody and dependency-neglect under the same docket number of the case that the court had closed the month before. The children were subsequently adjudicated dependent-neglected in an order entered July 23, 2014, based on neglect and parental unfitness. Specifically, the court found that appellant had been charged with delivery of methamphetamine, possession of methamphetamine, possession of drug paraphernalia, maintaining the premises for the purposes of drug sales, and endangering the welfare of the minors. The court found that appellant had placed the juveniles at substantial risk of serious harm as a result of their exposure to drug sales and to methamphetamine within reach of the juveniles.

Appellant entered a plea of guilty to the criminal charges and was sentenced to imprisonment followed by an eight-year suspended sentence. She was released on parole in March 2015. In a fifteen-month review order entered on November 3, 2015, the court found that the mother had not complied with the case plan and the orders of the court. Specifically, the court found that she did not have appropriate housing or sufficient income, that she had not completed a psychological evaluation or parenting classes, and that she had failed to visit regularly. The court did find that she had submitted to a drug-and-alcohol assessment and to drug screens. The court set the goal of the case as termination of parental rights and adoption.

After a hearing on January 8, 2016, the court entered an order on February 29, 2016, terminating appellant's parental rights. The trial court found three grounds for termination

by clear and convincing evidence: (1) that the children had been out of the home for more than twelve months and that, despite a meaningful effort by DHS to rehabilitate the parents, the conditions causing removal of the children had not been remedied; (2) that other factors and issues had arisen to demonstrate that returning the children to appellant would be contrary to the children's health, safety, and welfare; and (3) that the children had been subjected to aggravated circumstances, specifically, that there was little likelihood that services to the family would result in successful reunification. The court further found by clear and convincing evidence that termination of appellant's parental rights was in the children's best interest, specifically considering adoptability and potential harm.

## I.

For her first point on appeal, appellant contends that the trial court erred in denying her motion to dismiss the termination proceeding because DHS erroneously filed the case under the same docket number as a closed dependency–neglect action. At the close of the testimony in the termination hearing, appellant's attorney made the following oral motion:

> Just for the preservation of the record primarily it seems to me that there is some issue with reopening a new case under an old case number, so I would ask that this termination hearing be dismissed because it has been filed under an old case number. I just want to make sure that that request is in the record.

The court denied the motion because it was "reopened prior to my taking the bench"[2] and because the court did not believe that it was divested of jurisdiction to hear the petition.

To support her argument, appellant cites our supreme court's opinion in *Young v.*

---

[2]The circuit judge changed sometime after the adjudication order had been entered.

SLIP OPINION

*Arkansas Department of Human Services*, 2012 Ark. 334. In *Young*, an earlier dependency-neglect action had been closed in 2009 when the juvenile court placed the child in the permanent custody of the Sextons with visitation to the mother. In 2011, the Sextons filed an emergency ex parte petition to modify the mother's visitation, using the same case name and number from the closed dependency-neglect action. The juvenile court reopened the case and decided the custody issue in a "permanency-planning" format although it was not a dependency-neglect matter. Although the issue does not appear to have been argued by the parties in that case, the supreme court held that the circuit court erred in applying the Juvenile Code because the dependency-neglect case had been resolved, the action had been terminated, and the case could not be reopened. *Id*. at 2. Noting, however, that the juvenile division is a circuit court—and therefore a trial court of general jurisdiction—with jurisdiction to hear a general child-custody case, the *Young* court decided the merits of the appeal. *Id*. at 3–4.

Appellant's reliance on *Young* is misplaced. The facts in this case are very different from the facts before the court in *Young*. Here, the dependency-neglect action had been closed for less than a month when the new petition for emergency custody and dependency neglect was filed, not two years later as in *Young*. Second, the new petition in this case was not a general-custody matter but a dependency-neglect petition, exactly the type of case heard in juvenile court. Appellant admits that the circuit court in this case had jurisdiction

4

over the matter.[3] Appellant argues, relying on *Young*, that the court improperly exercised its jurisdiction and thus that the trial court erred in not dismissing the case.

We recognize that the supreme court held in *Young* that the circuit court erred in reopening the two-year-closed dependency-neglect case to entertain a petition for modification of visitation. We do not interpret the court's opinion, however, as forbidding the reopening of a closed dependency-neglect case in all circumstances, nor do we discern that the court offered a remedy for any alleged error in doing so. Indeed, in *Young*, where the court specifically held that the circuit court erred in reopening the case, the court then decided the merits of the appeal.

Accordingly, in this dependency-neglect case—decided on its own merits, occurring less than a month after the initial dependency-neglect case had been closed, and over which the juvenile court clearly had subject-matter jurisdiction—we hold that the court did not err in denying appellant's motion to dismiss. Moreover, appellant did not object to the case having been reopened until the end of the termination hearing, almost a year and a half after the alleged error had occurred. Any error argued on appeal must have first been directed to the circuit court's attention in some appropriate manner to give the court an opportunity to address the issue. *Quarles v. Courtyard Gardens Health & Rehab., LLC*, 2016 Ark. 112, at 10–11, 488 S.W.3d 513, 521 (holding error raised in posttrial motions untimely); *see also*

---

[3]"The circuit court shall have exclusive original jurisdiction of and shall be the sole court for" a number of proceedings under the Juvenile Code, including dependency-neglect and termination-of-parental-rights proceedings. Ark. Code Ann. § 9-27-306(a)(1)(B) & (E) (Repl. 2015).

*Smithee v. Ark. Dep't of Human Servs.*, 2015 Ark. App. 506, at 5, 471 S.W.3d 227, 230 (holding that, for a circuit court to have committed reversible error, timely and accurate objections must have been made so that the circuit court would have the opportunity to correct the error). A party cannot wait until the outcome of a case to bring an error to the circuit court's attention, *Smithee*, *supra*, particularly an error that could so easily have been remedied by the clerk's office opening a new case file.

## II.

We now turn to the merits of appellant's arguments challenging the circuit court's findings supporting termination. We review termination–of–parental–rights cases de novo. *Dinkins v. Ark. Dep't of Human Servs.*, 344 Ark. 207, 213, 40 S.W.3d 286, 291 (2001). At least one statutory ground must exist, in addition to a finding that it is in the child's best interest to terminate parental rights; these must be proved by clear and convincing evidence. Ark. Code Ann. § 9-27-341. In making a "best interest" determination, the trial court is required to consider two factors: (1) the likelihood that the child will be adopted and (2) the potential of harm to the child if custody is returned to a parent. *Ford v. Ark. Dep't of Human Servs.*, 2014 Ark. App. 226, at 2, 434 S.W.3d 378, 380. Credibility determinations are left to the fact-finder, here the trial court. *Schaible v. Ark. Dep't of Human Servs.*, 2014 Ark. App. 541, at 8, 444 S.W.3d 366, 371.

For her second point on appeal, appellant contends that the evidence was insufficient to support the court's findings on all three grounds for termination. With regard to the first ground, appellant does not contest that the children were each adjudicated dependent-

neglected and that they were out of her custody for 12 months—22 months, actually. Rather, she asserts that she did remedy the conditions that had caused their removal: specifically, the drug charges. She contends that she entered a negotiated plea, served the required time on the charges, and was released on parole. She also completed the required drug-and-alcohol assessment and tested negative on all drug screens. Thus, she argues, there was not sufficient evidence to demonstrate that she had failed to remedy the conditions that caused the removal of her children and the court's finding was clearly erroneous.

Although appellant's possession of drugs was one of the reasons for the children's removal, the children were removed from appellant's custody based on neglect and parental unfitness. The court found that appellant had been charged with delivery of methamphetamine, possession of methamphetamine, possession of drug paraphernalia, maintaining the premises for the purposes of drug sales, and endangering the welfare of the minors. The court found that appellant had placed the juveniles at substantial risk of serious harm as a result of their exposure to drug sales and to methamphetamine within reach of the juveniles. The problem was bigger than appellant's personal drug use. Therefore, the resolution of her criminal charges and clean drug screens was not, to the circuit court, sufficient to remedy the neglect and parental unfitness that caused the children's removal from her custody. Appellant had failed to comply with the case plan by failing to complete a psychological evaluation, failing to complete parenting classes, failing to obtain stable housing or stable income, and failing to attend regular visits with the children. At the termination hearing, the testimony established that she regularly cancelled or failed to show

up for visitation with her children. We hold that the court's finding on this ground is not clearly erroneous. Further, because only one statutory ground is necessary to support termination, it is not necessary to address appellant's arguments regarding the other grounds. *Sarut v. Ark. Dep't of Human Servs.*, 2015 Ark. App. 76, at 9, 455 S.W.3d 341, 347.

For her third point on appeal, appellant argues that the evidence was insufficient to demonstrate that termination was in the best interest of her children. Specifically, she contends that there was insufficient evidence for the court to consider adoptability because the only testimony regarding this issue was from the assigned DHS caseworker, who had never met the children, and that there was insufficient evidence to support the trial court's conclusion that the children faced a substantial risk of harm if returned to her.

We turn first to appellant's argument that there was insufficient evidence of adoptability to support the circuit court's finding of best interest. The circuit court is not required to find by clear and convincing evidence that the children are adoptable but merely must consider the likelihood of adoption if parental rights are terminated. *Miller v. Ark. Dep't of Human Servs.*, 2016 Ark. App. 239, at 7, 492 S.W.3d 113, 117. While this court has not required that abundant evidence of adoptability be introduced—generally a caseworker's testimony that a child is adoptable is sufficient to support an adoptability finding—we have previously held that "[c]onsideration requires evidence . . . or at least some finding by the trial court that other aspects of the best-interest analysis so favor termination that the absence of proof on adoptability makes no legal difference." *Haynes v. Ark. Dep't of Human Servs.*, 2010 Ark. App. 28, at 4. We have affirmed many cases in which the only evidence of

8

adoptability was the testimony of the caseworker. *Caldwell v. Ark. Dep't of Human Servs.*, 2016 Ark. App. 144, 484 S.W.3d 719; *Adams v. Ark. Dep't of Human Servs.*, 2016 Ark. App. 131, 485 S.W.3d 275; *Madison v. Ark. Dep't of Human Servs.*, 2013 Ark. App. 368, 428 S.W.3d 555; *Reed v. Ark. Dep't of Human Servs.*, 2010 Ark. App. 416, 375 S.W.3d 709 (holding that testimony of caseworker's supervisor, who had little personal contact with the children, was sufficient).

Here, the caseworker testified that the children were adoptable. The CASA report specifically recommended adoption, and, while not evidence, the attorney ad litem stated at the termination hearing that the children were "clearly adoptable." The court made the following finding in its order:

> As to the juvenile's adoptability, this Court finds that the juveniles are adoptable based on the testimony of Amy Taber and the history of this case, including the fact that the juveniles are healthy and have no conditions that would bar adoption.

The court is not required to find that the children are adoptable but must merely "consider the likelihood that the child will be adopted if the termination petition is granted." Ark. Code Ann. § 9-27-341(b)(3)(A). We hold that the court did that here.

We turn now to appellant's argument regarding potential harm. Potential harm to the child is a factor to be considered, but a specific potential harm does not have to be identified or proved by clear and convincing evidence. *Pine v. Ark. Dep't of Human Servs.*, 2010 Ark. App. 781, at 11, 379 S.W.3d 703, 709. The potential-harm analysis is to be conducted in broad terms. *Id*. It is the "best interest" finding that must be supported by clear and convincing evidence. *Wilson v. Ark. Dep't of Human Servs.*, 2015 Ark. App. 666, at 13, 476

S.W.3d 816, 824. The court found that appellant did not have stable housing or a stable job. A stable home is one of a child's most basic needs, and the failure to secure safe and appropriate housing of one's own is contrary to the child's well-being and best interest. *Welch v. Ark. Dep't of Human Servs.*, 2010 Ark. App. 798, at 9, 378 S.W.3d 290, 295; *see also Brumley v. Ark. Dep't of Human Servs.*, 2015 Ark. App. 90, 455 S.W.3d 347 (holding that continued uncertainty is itself potentially harmful to children). Moreover, appellant failed to comply with the case plan and did not even demonstrate the ability to visit her children regularly. Even full compliance with the case plan is not determinative; the issue is whether the parent has become a stable, safe parent able to care for his or her child. *Ford*, 2014 Ark. App. 226, at 3, 434 S.W.3d at 381. We hold that the court's finding on best interest was not clearly erroneous.

Affirmed.

WHITEAKER and HOOFMAN, JJ., agree.

*Tina Bowers Lee*, Arkansas Public Defender Commission, for appellant.

*Mary Goff*, Office of Chief Counsel, for appellee.

*Chrestman Group, PLLC*, by: *Keith L. Chrestman*, attorney ad litem for minor children.